**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEAN HEIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:25-cv-01140 |
| v. | ) | |
| | ) | Chief Judge Cathy Bissoon |
| WENDY FELDMEIER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

**I.        MEMORANDUM**

For the reasons that follow, Defendant Officer Tyler M. Ray's Motion to Dismiss

(Doc. 3) will be granted in part and denied in part; Plaintiffs Sean Hein and Forward Home

Enhancements, LLC's Motion to Dismiss (Doc. 6) will be granted in part and denied in part; and

Third Party Defendant Jeffrey T. Morris's Motion to Dismiss the Complaint to Join Additional

Defendants (Doc. 14) will be granted.  Accordingly, Count V of the Complaint (Doc. 1-2) will be

dismissed without prejudice; Counterclaims IV and VI of the so-styled Amended Answer, New

Matter & Counterclaim (Doc. 1-4) (the "A&C") will be dismissed with prejudice;

Counterclaim IX of the A&C will be dismissed without prejudice; and all counts of the so-styled

Complaint to Joint Additional Defendant (Doc. 1-5) (the "Third Party Complaint" or "TPC") will

be dismissed with prejudice.

**A.  Procedural History**

Plaintiffs initiated this action by filing a Complaint in the Court of Common Pleas of

Allegheny County on June 3, 2025.  Comp. at 2.[1]  Defendants Wendy and Steven Feldmeier (the

---

[1] Pagination in this Memorandum for all documents filed in the instant action refers to the page number utilized in the cited document's ECF heading banner.

"Feldmeiers"), against whom Plaintiffs brought causes of action under state law for defamation, malicious prosecution, abuse of process and breach of contract, see id. at 15-23, responded by filing the pro se A&C, on July 23, 2025, see A&C at 2. In the A&C, the Feldmeiers pleaded defenses and alleged state-law counterclaims against Plaintiffs for fraudulent misrepresentation; failure to comply with Pennsylvania's Home Improvement Consumer Protection Act, 73 Pa. Cons. Stat. § 517.1, et seq., and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, et seq.; abuse of process; fraud; defamation; breach of contract; unjust enrichment; and intentional infliction of emotional distress ("IIED"). See A&C at 20-33. The Feldmeiers also filed the Third Party Complaint in the Court of Common Pleas, naming Jeffrey T. Morris, Esq., who had filed the Complaint on Plaintiffs' behalf and remains Plaintiffs' counsel of record in this litigation, as a defendant. In the Third Party Complaint, the Feldmeiers brought state-law causes of action against Attorney Morris for abuse of process, IIED and fraud. See TPC at 6-10.

On July 29, 2025, Officer Ray removed this action to federal court. Doc. 1. Officer Ray invoked the Court's federal question jurisdiction for Plaintiffs' § 1983 claim pursuant to 28 U.S.C. §§ 1331 and 1343, because that claim alleged violations of Plaintiffs constitutional rights. Id. ¶ 6. He invoked the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law malicious prosecution claim against him. Id. ¶ 7.

Upon removal, Officer Ray moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the causes of action against him, with Plaintiffs timely filing a memorandum in opposition. Plaintiffs moved under Rule 12(b)(6) to dismiss the Feldmeiers' abuse of process, unjust enrichment, defamation and IIED counterclaims. Attorney Morris also moved under Rule 12(b)(6) to dismiss all of the Feldmeiers' claims in the Third Party Complaint. The Feldmeiers have not submitted timely opposition memoranda in response to Plaintiffs' and Attorney Morris's respective motions to dismiss.

2

**B. Officer Ray's Motion to Dismiss[2]**

     *i.    Relevant Factual Background*

Hein's claims against Officer Ray arise from a failed criminal prosecution. For over two years, Hein faced criminal jeopardy on felony charges in the Court of Common Pleas of Allegheny County. Comp. ¶¶ 46, 83. When the time came for Hein's trial, however, the prosecution's witnesses—the Feldmeiers and Officer Ray—did not appear. Id. ¶ 90. Without Officer Ray, and unable to contact the Feldmeiers, the prosecution *nolle prossed* the charges against Hein. Id. ¶¶ 90, 104.

The foundation for the failed prosecution against Hein was laid on November 28, 2022, when Officer Ray responded to a fraud report at the Feldmeiers' residence. Ray Mot. Ex. B (Doc. 3-3) at 7. He was met there by Wendy Feldmeier, and her son, Steve Feldmeier, who complained about the pace and craftmanship of a home improvement project that the Feldmeiers had contracted Plaintiff Forward Home Enhancements ("FHE") to complete. Id. The project, according to the Feldmeiers' representations to Officer Ray, had been estimated to cost nearly $35,000 dollars, and included the construction of a back deck as well as roofing work. Id. The

---

[2] Facts in this section are derived from the Complaint and the exhibits attached thereto. The Court has also considered Officer Ray's Affidavit of Probable Cause, dated December 3, 2022, which Officer Ray attached as Exhibit B to his Motion to Dismiss, because this document was integral to and explicitly relied upon in the Complaint but was not attached as an exhibit. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). The Court has also considered the Court of Common Pleas of Allegheny County Criminal Docket No. CP-02-CR-0000465-2023, which was also attached as an exhibit to Officer Ray's Motion to Dismiss, as it constitutes a public document subject to the Court's judicial notice. See Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (citing Collins v. Kendall Cnty., 807 F.2d 95, 99 n.6 (7th Cir. 1986)). The Court accepts all factual allegations in the Complaint as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. Klotz v. Celentano Stadtmauer & Walentowicz LLP, 991 F.3d 458, 462 (3d Cir. 2021); see also Lutz v. Portfolio Recovery Assocs., LLC, 49 F. 4th 323, 334 (3d Cir. 2022) ("[The plaintiff's] pleading receives the benefit of reasonable inferences at the motion-to-dismiss stage.").

Feldmeiers reported that construction on the project had continued as recently as October 2022, but that Wendy Feldmeier had texted Hein on October 14, 2022, telling him to not set foot on the property again.  Id.  Other than speaking with the Feldmeiers, Officer Ray made no efforts to personally investigate the Feldmeiers' property.  Comp. ¶¶ 45, 75.  In particular, Officer Ray left the property without viewing the rear of the residence, where the Feldmeiers, and later Hein, advised him that the work was focused.  Id. ¶ 74.

After speaking with the Feldmeiers, Officer Ray called Hein, who stated that materials had been purchased and delivered for the Feldmeiers' project and that FHE employees had conducted work on the deck and its roof, but that the project had been delayed due to the Feldmeiers' coverage negotiations with their insurance carrier.  Ray Mot. Ex. B at 7-8; Comp. ¶ 76.  Hein also asked Officer Ray whether he had "look[ed] around the back of the house," to which Officer Ray responded in the negative.  Id. ¶ 42.  A few days after this call, Hein emailed Officer Ray a file of materials (the "Emailed Documents"), including photographs of work performed, receipts for materials purchased for the project and delivered to the Feldmeiers' residence, prior formal refund offers, the Feldmeiers' past payment history as well as text messages between Hein and Wendy Feldmeier.[3]  Id. ¶¶ 77-78.

After following up with the Feldmeiers, who provided Officer Ray a copy of the project contract and checks indicating that Feldmeiers had paid $25,025 of the projected $35,000 project budget, Officer Ray drafted an affidavit of probable cause (the "Affidavit") against Hein for

---

[3] The Complaint does not specify with precision the content of the text messages provided to Officer Ray.  But the Complaint indicates that there was text message evidence of Hein advising Wendy Feldmeier that missed payments would cause project delay as well as of potential insurance fraud by the Feldmeiers in connection with the project.  Comp. ¶¶ 20, 32. The Complaint also pleaded that Wendy Feldmeier suggested by text message that she may be able to "help" Hein with certain criminal charges, apparently because she had relationships with employees of the Allegheny County Court of Common Pleas Criminal Division.  Id. ¶¶ 24-27.

crimes under Pennsylvania law sounding in fraud, namely:  Theft by Deception (False Impression),[4] Deceptive or Fraudulent Business Practices[5] and Home Improvement Fraud.[6]  Ray Mot. Ex. B at 8-9.  On the basis of the Affidavit, a warrant was issued for Hein's arrest.  Comp. ¶ 46.  Over the course of the prosecution against Hein, Officer Ray never shared the Emailed Documents with the court or district attorney overseeing the case.  Id. ¶¶ 127, 129.

    *ii.*    *Plaintiffs Adequately State a Pennsylvania Law Malicious Prosecution Claim.*

For Plaintiffs to state a Pennsylvania-law claim for malicious prosecution against Officer Ray, Plaintiffs must adequately plead that Officer Ray instituted proceedings against Hein (1) without probable cause, (2) with malice and (3) that the proceedings terminated in favor of Hein.  Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249, 544 A.2d 940, 941 (Pa. 1988) (citing Miller v. Pa. R.R. Co., 89 A.2d 809, 811 (Pa. 1952)).

In moving to dismiss, Officer Ray primarily argues that the first element of malicious prosecution has not been met because the Affidavit established probable cause for the prosecution as a matter of law.  Ray Mem. (Doc. 4) at 5-6.  Plaintiffs argue that no probable cause supported the charges against Hein because Officer Ray omitted exculpatory evidence

---

[4] See 18 Pa. Cons. Stat. § 3922(a)(1) ("A person is guilty of theft if he intentionally obtains or withholds property of another by deception.  A person deceives if he intentionally:  (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise . . . .  The term 'deceive' does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.").

[5] See 18 Pa. Const. Stat. § 4107(a)(2) ("A person commits an offense if, in the course of business, the person . . . (2) sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service . . . .").

[6] See 73 Pa. Const. Stat. § 517.8(a)(1) ("A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to perpetrated by anyone, the actor:  (1) makes a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price . . . .").

from the Affidavit, and solely relied upon the Feldmeiers' allegedly false representations to him without taking minimal steps to investigate.[7]  Pltfs. Opp. Mem. (Doc. 9) at 1-2.

"Police may not fake facts to find probable cause."  Pinkney v. Meadville, 95 F. 4th 743, 746 (3d Cir. 2024).  Moreover, "[a] police officer may not put on blinders and then claim ignorance."  Id. at 749.  Where, as here, a law enforcement officer has initiated criminal proceedings through an affidavit of probable cause, a plaintiff may allege absence of probable cause by pleading "first, that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'"  Dempsey v. Bucknell Univ., 834 F.3d 457, 468-69 (3d Cir. 2016) (alteration in original) (quoting Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000)).  Accepting the factual allegations in the Complaint as true, Plaintiffs have adequately pleaded both of those circumstances.

> 1.    Officer Ray's Affidavit Recklessly Disregarded the Truth.

Temporarily setting aside the Emailed Documents, the Affidavit itself was already rife with contradictions.  The Feldmeiers reportedly indicated that "no materials were delivered, nor was the work conducted" but also "clarified the only work conducted was a base for the deck,

---

[7] Plaintiffs cite nineteenth century caselaw for the proposition that absence of probable cause may be inferred from the termination of the prosecution alone.  See Pltfs. Opp. Mem. at 7 (citing Emerson v. Cochran, 4 A. 498 (Pa. 1886)).  That is plainly is not the standard today.  See Groda v. Am. Stores Co., 173 A. 419, 421 (Pa. 1934) ("It has sometimes been held in this state in actions for malicious prosecution that proof that criminal proceedings against the person who was the defendant in the criminal case terminated in his favor . . . was in itself evidence of the want of probable cause for the prosecution . . . .  Such cases as have or seem to have supported this doctrine can no longer be considered as expressing the law of this state and they are now overruled to the extent that they support the doctrine herein repudiated"); see also Givens v. Wal-Mart Stores, Inc., No. 22-2989, 2023 WL 7144628, at *3 (3d Cir. Oct. 31, 2023) (a witness's failure to appear "has no bearing on the existence of probable cause" where the prosecution "was pursued and maintained by the public prosecutor").

took sidewall off of the home[] and multiple holes were dug on the property." Ray Mot. Ex. B at 7 (emphasis added). The Feldmeiers' statement that Plaintiffs' employees had "finished the sub structure of the deck" appears irreconcilable with their concurrent claim that "no materials were delivered" to the property. Id. The presence of Plaintiffs' "large dumpster on the property" is also facially inconsistent with the claim that no work had been done. Id.

Against this backdrop, the Court considers Officer Ray's alleged errors in the Affidavit. Namely, that Officer Ray (1) asserted that "while at the FELDMEIER's address, I did not observe any materials delivered" but had not investigated the property at all, including the rear of the property where any work would have been conducted, and (2) omitted reference to the Emailed Documents.

Crediting Plaintiffs' allegations, the Court cannot say on the pleadings that Officer Ray's assertion that he "did not observe any materials delivered" was without reckless disregard for the truth. "Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." Wilson, 212 F.3d at 788. Faced with the Feldmeiers' inconsistent representations about the project, which Officer Ray knew involved a "back deck," he could not assume his observation of the front of the property alone was at all probative of whether materials had been delivered to the property. Cf. Pinkney, 95 F. 4th at 748 (while officer could ask a witness leading questions, "he could not assume that, by answering them, [the witness] was making a confident eyewitness identification"). That was especially true after Officer Ray's conversation with Hein when the location of the delivered materials was reiterated to him. Without viewing the rear of the Feldmeiers' residence, Officer Ray brushed past Hein's assertions that materials had been delivered and work completed as well as the Feldmeiers' inconsistant representations. Officer Ray "had obvious reasons to doubt the

7

accuracy of the information he reported" given his knowledge that the project was focused on the uninvestigated rear of the Feldmeiers' property.  Wilson, 212 F.3d at 788.

Officer Ray's alleged omissions only further burnishes his reckless vouching for the non-delivery of materials.  "Omissions are made with reckless disregard where 'an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'"  Andrews v. Scuilli, 853 F.3d 690, 698 (3d Cir. 2017) (alterations in original) (quoting Wilson, 212 F.3d at 788).  In other words, "a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence."  Wilson, 212 F.3d at 787.  Because the charges against Plaintiffs sounded in fraud, Plaintiffs' offers to refund the Feldmeiers as well as documentary evidence that construction materials had been delivered and work completed certainly constituted "the kind of thing the judge would wish to know"—especially considering the Feldmeiers' inconsistent statements.  That particularly is true where the investigating officer has not personally viewed the area relevant to the allegations (notwithstanding that Officer Ray's lack of probative personal knowledge was concealed from the reviewing judge).  Under the circumstances, a reasonable jury could find that failing to include information about the Emailed Documents, or even reference that they had been provided, was done with "reckless disregard."

### 2.  Officer Ray's Alleged Errors Were Material.

"To tell if the errors were material," the Court must "reconstruct the affidavit by 'excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted.'"  Pinkney, 95 F. 4th at 789 (alterations in original) (quoting Wilson, 212 F.3d at 789).  Then, the Court considers "whether the revised facts and circumstances would have 'suffic[ed] in themselves to warrant a reasonable person to believe'" that Plaintiffs had committed Theft by Deception (False

8

Impression), Deceptive or Fraudulent Business Practices or Home Improvement Fraud.  Id. (alterations in original) (quoting Wilson, 212 F.3d at 789).  "'[P]robable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.'" Commonwealth v. Clark, 735 A.2d 1248, 1252 (Pa. 1999) (alteration in original) (quoting Commonwealth v. Evans, 685 A.2d 535, 537 (Pa. 1996)).

The Affidavit is reconstructed below accounting for Officer Ray's errors with additions in bracketed and bolded typeface, and removed language stricken in bolded typeface:

*** 

On 11/28/2022 at 1201 hours, I was dispatched to 3875 Louisa Street for a fraud report.

Upon arrival, I was greeted by complainant WENDY FELDMEIER and son STEVE FELDMEIER; STEVE FELDMEIER reported the following:

In April 2020, the FELDMEIERS signed a contract with Forward Company Home Enhancement.  The FELDMEIERS hired Forward contracting company to provide multiple home repairs/enhancements such as a new roof for the home, a new deck, and a roof for the deck.  Overall, the project was estimated to cost nearly $35,000 dollars.

In June 2021, Forward Company Home Enhancements began to conduct work for the FELDMEIERS by providing a new deck.  Yet, the contracting company only finished the sub structure of the deck.  Employee/company owner SEAN HEIN sent multiple employees from June to October 2022 to conduct work.  Each time the employees would conduct work at the home, they would collect a check.  The FELDMEIERS stated Forward Company would conduct small work to the home, but would never see advancement in the project.  Also, HEIN would often text WENDY stating he could not conduct work today, and often schedule dates later in time.  WENDY and STEVE provided copies of the contract they had.

On the contract, Forward Home Enhancements charged nearly $15,000 dollars for the back deck work.  Also, the FELDMEIERS were charged nearly $5,500 dollars for a new roof installation.  After paying Forward Enhancements for these services, no materials were delivered, nor was the work conducted.  **[HEIN emailed me receipts for materials that were purchased and delivered as well as photographs of completed work on the project.]**  STEVE clarified the only work

9

conducted was a base for the deck, took sidewall off of the home, and multiple holes were dug on the property.

Recently, WENDY and STEVE have reached out to SEAN HEIN and Forward Home Enhancements multiple times, but have yet to receive a response. Since then, WENDY hired a new contractor. Also, WENDY sent a message to SEAN on October 14th, 2022 advising SEAN to not step foot on the property again. SEAN left a large dumpster on the property as well.

WENDY reported each payment check they would attempt to give to SEAN, SEAN would request them to address his mother YVONNE SCARSELLI as the recipient. STEVE also wanted to report SEAN does not have a insurance, a contracting license, or an actual company.

On 11/28/2022 at 1813 hours, I contacted SEAN HEIN via cell phone. HEIN reported the following:

In April 2020, HEIN's company Forward Home Enhancement was contacted by the FELDMEIER family to conduct construction to their property. HEIN claimed a tree fell on their back porch, hence the reason he was contacted.

In June 2021, HEIN was hired by the FELDMEIER family to conduct construction to their back porch, located at 3875 Louisa Street. The FELDMEIER's paid an initial security deposit of $3,782.50. The FELDMEIER's requested a certain bamboo type wood be used for the back deck construction. HEIN and the FELDMEIER's agreed to a contract for Forward Home Enhancement to begin construction.

HEIN claimed the project was delayed on numerous occasions due to the FELDMEIER family contacting their insurance for coverage purposes. HEIN claimed employees conducted work at the FELDMEIER home, such as digging holes to begin the foundation. While HEIN and Forward Home Enhancement were at the home, the FELDMEIER's requested to add a roof to their new porch. HEIN agreed, and added this to the contract.

While HEIN was conducting work, HEIN claimed the FELDMEIER family wanted to add numerous items to the project, including a fire place on the back deck. HEIN claimed the family added nearly $30,000 dollars in additions to the original project. HEIN claimed when it was time to pay, WENDY did not pay him due to her being out of the Pittsburgh area.

HEIN's employees TODD and RYAN came went to the FELDMEIER's home to conduct construction on the roof attached to the home. Yet, HEIN was requested back to the home because the work conducted to the FELDMEIER's was unacceptable. HEIN claimed the last time he has conducted work to the home was September 2022. The last time HEIN was in contact with the FELDMEIER's was August 2022. HEIN claimed the FELDMEIER's have given him only $12,000

10

dollars. HEIN spent the $12,000 dollars on the project, and delivered the materials to the FELDMEIER's home. HEIN claimed he would provide me with receipts of delivery within 24 hours of our phone call, but **did not provide them** [**provided them to me after 24 hours had elapsed**]. Note, while at the FELDMEIER's address, **I did not observe any materials delivered** [**I did not observe the rear of the house where work would have been completed and HEIN indicated that materials were stored**].

On 11/29/2022, I contacted STEVE and WENDY FELDMEIER via cell phone. I directed STEVE and WENDY to send the contract agreed upon and checks to my email.

Upon further investigation, WENDY FELDMEIER provided proof she has paid SEAN HEIN $25,025 dollars. **[HEIN provided me evidence of prior offers to refund the balance of the project budget, less materials purchased and work completed. HEIN also sent me the FELDMEIERS' payment history as well as text messages between HEIN and WENDY FELDMEIER concerning the project.]** No materials delivered nor further work has been conducted to the home.

After contacting the Allegheny County District Attorney in regards to this case, SEAN HEIN will be charged with the following:

3922: Theft by Deception
4107: Deceptive or Fraudulent Business Practices
Home Improvement Fraud

Your affiant is requesting an arrest warrant due to these circumstances.

***

Even before Officer Ray's errors are corrected, the Affidavit already presents a close call with respect to probable cause. By the Feldmeiers' admission, the project was still $9,075 under the estimated budget. The Affidavit includes no indication that Plaintiffs and the Feldmeiers had agreed upon beginning or end dates for the project, or that contractually agreed-upon benchmarks (rather than the Feldmeiers' perception of how quickly the project should proceed) were being missed. Instead of evincing a lack of intent on behalf of Plaintiffs to complete work on the project, the Affidavit indicates that it was actually Wendy Feldmeier who foreclosed future work on October 14, 2022, less than two weeks after the Feldmeiers said that FHE employees had last been on site.

11

If probable cause was a close call before accounting for Officer Ray's errors, a reasonable jury certainly could find that the reconstructed Affidavit above fails to establish probable cause. Contrary to the original Affidavit, Officer Ray's inability in the reconstructed Affidavit to personally say whether construction materials had been delivered or work performed on the Feldmeiers' property materially changes the factual milieu of the Affidavit. Officer Ray affirmatively presenting himself in the original Affidavit as having adequate knowledge about the status of the project to resolve disputed characterizations in favor of the Feldmeiers hid from the reviewing judge Officer Ray's complete lack of relevant personal knowledge about the project's status. Before the reconstruction, Officer Ray was qualified to opine about whether Hein or the Feldmeiers was telling the truth; after reconstruction, the Affidavit lacks that benefit. The omitted information also substantially shifts the credibility of the Feldmeiers versus Hein as presented in the Affidavit. In the words of the Third Circuit: "Probable cause requires enough evidence—one obviously unreliable, uncorroborated witness is not enough. According to the pleadings, Officer [Ray] exaggerated and hid facts to manufacture probable cause. That was wrong." Pinkney, 95 F. 4th 749-50.

Because a reasonable jury could find that Officer Ray acted with reckless disregard for the truth concerning facts material to the probable cause for the prosecution, Officer Ray's Motion to Dismiss will be denied as to Count II of the Complaint.[8]

### iii.     Plaintiffs Have Not Pleaded a Viable § 1983 Claim.

Plaintiffs claim that Officer Ray violated Hein's rights guaranteed under Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing the Emailed Documents to the district attorney and court overseeing his prosecution.[9]  A Brady violation entails three elements.  "First, the evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching.'"  Dennis v. Sec'y, Pa. Dep't of Corr., 834 F.3d 263, 284 (3d Cir. 2016) (en banc) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).  "Second, it 'must have been suppressed by the State, either willfully or inadvertently.'"  Id. at 284-85 (quoting Strickler, 527 U.S. at 282).  "Third, the evidence must have been material such that prejudice resulted from its

----

[8] The Court has considered Officer Ray's remaining arguments and finds them unavailing.  The assertion that Plaintiffs have failed to adequately allege the malice element of malicious prosecution is inapposite given that the Court has found lack of probable cause to be adequately pleaded.  Under Pennsylvania law, "[l]egal malice is not limited to motives of hatred or ill will, but may consist of defendant's reckless and oppressive disregard of plaintiff's rights."  Hugee v. Pa. R. Co., 101 A.2d 740, 743 (Pa. 1954).  It "may be inferred from want of probable cause."  Kelley, 544 A.2d at 941.  Officer Ray's arguments about whether Hein's bail revocation constituted a deprivation of liberty also are also irrelevant, because "[d]eprivation of liberty . . . is not a required element of malicious prosecution under Pennsylvania state law."  See Segreti v. Borough of Wilkinsburg, 436 F. App'x 114, 116 (3d Cir. 2011) (citing Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)).  Finally, the alleged nolle prosequi of the underlying prosecution due to non-appearance of the prosecution's witnesses was adequate to fulfill the "favorable termination" element of malicious prosecution under Pennsylvania law.  See Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993).

[9] Plaintiffs also argued that they seek to prevail "on a claim that an affidavit of probable cause reflected a false version of events and that an accurate affidavit would not have established probable cause."  See Pltfs. Opp. Mem. at 9.  To the extent that Plaintiffs have cited cases at all in support of this purported constitutional violation, those cases addressed violations of the Fourth Amendment, which Plaintiffs explicitly do not rely upon in the Complaint.  Comp. ¶ 119; Pltfs. Opp. Mem. at 2.  To the extent that Plaintiffs are attempting to use the § 1983 cause of action to allege a Fourth Amendment violation, Plaintiffs will have an opportunity to properly plead such a § 1983 claim upon amendment.

suppression." Id. (citing Strickler, 527 U.S. at 282).  By not alleging that Hein's criminal defense counsel was deprived of the Emailed Documents, i.e., that the Emailed Documents actually were suppressed, Plaintiffs have not pleaded a § 1983 claim premised on a Brady violation.

.        For the purposes of Brady, "[s]uppression" is "[t]he prosecution's withholding *from the defense* of evidence that is favorable to the defendant."  Id. at 292 (emphasis added) (quoting *Suppression of Evidence*, Black's Law Dictionary (10th ed. 2014)).  The Court of Appeals for the Third Circuit has made clear that "the concept of [defense counsel's] 'due diligence' plays no role in the Brady analysis," id. at 291; nonetheless, "the government need not disclose such evidence when it is aware that defense counsel already has the material," United States v. Bergrin, No. 20-2828, 2022 WL 1024624, at *8 (3d Cir. Apr. 6, 2022) (citing Dennis, 834 F.3d at 292).  As a result, "defense knowledge of . . . purportedly exculpatory material is potentially fatal to a Brady claim, even where there might be some showing of governmental impropriety." United States v. Pelullo, 399 F.3d 197, 215 (3d Cir. 2005).

There is no question that Hein had knowledge of the Emailed Documents upon which he now rests his Brady claim.  In fact, it was Hein himself who gathered and sent the Emailed Documents to the prosecution in the first instance.  A defendant's knowledge of exculpatory facts may not necessarily be imputed upon a defense counsel.  But, for this civil § 1983 claim, in the absence of a specific allegation to the contrary, it is palpably implausible that defense counsel was deprived of the exculpatory material where the Hein personally collected the Emailed Documents; voluntarily sent the Emailed Documents to the prosecution outside of a custodial environment; and has not pleaded other facts to explain why, having eagerly provided the Emailed Documents to Officer Ray, Hein did not also provide them to his defense counsel. Without pleading facts adequate to show plausibly that the Emailed Documents were suppressed,

14

Plaintiffs have failed to state a § 1983 claim premised upon a <u>Brady</u> violation.  <u>See, e.g.</u>, <u>Johnson</u> <u>v. Koehlder</u>, 733 F. App'x 583, 586 (3d Cir. 2018) ("[T]he troopers unquestionably knew that [Plaintiff] Johnson had this material in his possession well before trial was scheduled, and Johnson cannot show that his <u>Brady</u> rights were violated."); <u>see also</u> <u>Pelullo</u>, 399 F.3d at 211 ("This, therefore, is not a situation where the government failed to disclose documents unknown to the defense, about which the government had superior knowledge.").

Notwithstanding the pleading deficiencies of the § 1983 claim, the Court does not believe that pleading such a claim would be futile.  Accordingly, the § 1983 claim will be dismissed without prejudice and Plaintiffs may amend the Complaint as set forth in the Order below.

## C.  Plaintiffs' and Attorney Morris's Motions to Dismiss

### i.    *Relevant Factual Background*

The Feldmeiers pleaded a factual narrative in the A&C and Third Party Complaint largely irreconcilable with the one presented in the Complaint.  According to the Feldmeiers, Hein induced them into executing a home improvement contract with FHE by misrepresenting, *inter alia*, the "type and amount" of work necessary for the project; the "nature" of the work; the work's value and cost; the amount of up-front payment FHE was allowed to collect; the need for additional payments mid-project; the amount, type and cost of necessary materials; Hein's contractor licensure status; and FHE's insurance status.  A&C ¶¶ 167-73, 179.  Moreover, the Feldmeiers only agreed to the subsequent contracts expanding the original scope of their relationship with FHE "under extreme duress and following . . . threats conveyed" by Hein.  <u>Id.</u> ¶ 149.  Notwithstanding FHE's contractual agreements, per the Feldmeiers, "no work or materials have been provided" to them.  <u>Id.</u> ¶ 144.  To the contrary, Plaintiffs "physically damaged [the Feldmeiers'] property by taking off half of the roof and never returning, leaving Defendant's house without a roof for over six months."  <u>Id.</u> ¶ 164.

15

The Feldmeiers also allege that the Pennsylvania Attorney General filed an enforcement action against Hein in August 2024, seeking a permanent injunction preventing him from working in Pennsylvania. Id. ¶ 163; TPC ¶ 6. Because the Feldmeiers are witnesses in the Attorney General's litigation against Hein, they allege that the instant lawsuit was filed to "intimidate and harass" them "so that they do not testify" for the Attorney General, and otherwise to prevent them from recovering funds taken by Plaintiffs. A&C ¶¶ 209, 250; TPC ¶¶ 6, 8, 17. Attorney Morris represents Plaintiffs in the Attorney General litigation and, according to the Feldmeiers, made false and misleading statements in the Complaint in an effort to press litigation advantage in the Attorney General action. TPC ¶¶ 14, 17.

  ii. *Abuse of Process*

The Feldmeiers attempt to bring Pennsylvania abuse of process causes of action against both Plaintiffs and Attorney Morris. To plead a claim for abuse of process, the Feldmeiers must show that Plaintiffs and/or Attorney Morris (1) used a legal process against the Feldmeiers, (2) primarily to accomplish a purpose for which the process was not designed and (3) causing harm to the Feldmeiers. Rice Drilling B, LLC v. Scott, 325 A.3d 663, 680 (Pa. Super. 2024).

Here, the Feldmeiers allege that it was an abuse of process for Plaintiffs and Attorney Morris to file the Complaint for improper purposes. A&C ¶¶ 202, 203; TPC ¶¶ 17, 18. But, under Pennsylvania law, the initiation of a civil action by filing a complaint cannot alone support a claim for abuse of process because "[a]n abuse of process claim cannot be based on the wrongful initiation of proceedings but is based on a perversion of the legal process after it is initiated." McCarthy v. Jauregui, No. 3:21-cv-01759, 2024 WL 1313868, at *6 (M.D. Pa. Mar. 27, 2024) (collecting cases); see also EMC Outdoor, LLC v. Stuart, No. 2:17-cv-05172, 2018 WL 3208155, at *4 (E.D. Pa. June 28, 2018) ("Defendant contends that the mere *initiation* of the present suit constituted an abuse of process. However, it is well-settled that the commencement

or maintenance of a lawsuit, even for an improper purpose, does not constitute an abuse of process under Pennsylvania law.").[10]

"A complaint . . . involves the initiation of a proceeding. Thus, a complaint is not 'legal process for purposes of an abuse of process claim." McCarthy, 2024 WL 1313868, at *7. Accordingly, since the Feldmeiers' abuse of process claims against Plaintiffs and Attorney Morris are based solely upon the filing of the Complaint, the motions to dismiss these counts will be granted. Amending abuse of process claims premised on the initiation of litigation alone would be futile, so dismissal of these counts will be with prejudice.

    iii.    *Judicial Privilege*

The Court cannot discern any factual basis other than the filing and content of the Complaint for the Feldmeiers' defamation claim against Plaintiffs and the remaining claims against Attorney Morris. A&C ¶¶ 228-34 (Counterclaim VI premised upon Plaintiffs "fil[ing] a Complaint in Civil Action against the Defendants"); TPC ¶¶ 23 (Third Party Count II for IIED premised upon "knowingly and intentionally fil[ing] and pursu[ing] civil action"), 29 (Third Party Count III for fraud premised upon the Third Party Defendant "ma[king] material misrepresentations of fact and law in the course of filing and prosecuting a civil action"). Plaintiffs and Attorney Morris move for dismissal of these counts as barred by Pennsylvania's judicial privilege. Pltfs. Mem. (Doc. 7) at 5-7; Morris Mem. (Doc. 15) at 8-10.

---

[10] Pennsylvania law distinguishes the tort of abuse of process from the separate tort of wrongful use of civil proceedings. Unlike abuse of process, which addresses conduct *after* lawsuit initiation, "a cause of action for wrongful use of civil proceedings involves the improper procurement, initiation or continuation of a lawsuit," and requires that the pleader establish that "the underlying proceedings were terminated in their favor." McCarthy, 2024 WL 1313868, at *5 (quoting Sabella v. Estate of Milides, 992 A.2d 180, 188 (Pa. Super. 2010)). Because the instant action has not yet terminated, to the extent that Plaintiffs intended to plead a claim for wrongful use of civil proceedings, such a cause of action would be premature.

17

Pennsylvania's judicial privilege provides "absolute immunity for 'communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought*.'" Church Mut. Ins. Co. v. All. Adjustment Grp., 708 F. App'x 64, 68 (3d Cir. 2017) (italics in original) (quoting Bochetto v. Gibson, 860 A.2d 67, 71 (Pa. 2004)). "Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceedings and material and relevant to it, the privilege applies." Clodgo v. Bowman, 601 A.2d 342, 345 (Pa. Super. 1992); see also Brown v. Del. Valley Transplant Program, 539 A.2d 1372, 1373-74 (Pa. Super. 1988) (affirming dismissal of IIED claim as barred by judicial privilege); Torres v. Brenntag Ne., Inc., 253 A.3d 263, 263 (Pa. Super. 2021) (fraudulent misrepresentation action barred by judicial privilege); Church, 708 F. App'x at 68-70 (Pennsylvania statutory fraud claim barred by judicial privilege).  The privilege immunizes both parties and their attorneys alike.  Schanne v. Addis, 121 A.3d 942, 947 (Pa. 2015) (citing Binder v. Triangle Publ'ns, Inc., 275 A.2d 53, 56 (Pa. 1971)).  And "the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice."  Id. (citing Bochetto, 860 A.2d at 71 n.12).

The Feldmeiers make no allegation that the Complaint was not filed as a regular part of the legal proceedings, and the allegations in the Complaint about the Feldmeiers' possible motivations for initiating the criminal proceedings against Hein are pertinent and material to the malice element of Plaintiffs' malicious prosecution claims.  Filing the Complaint, therefore, is clearly protected by the judicial privilege.  Plaintiffs' Motion to Dismiss will be granted as to Counterclaim VI, and Attorney Morris's Motion to Dismiss will be granted as to Counts II and III of the Third Party Complaint.  Amendment would be futile for these claims and, therefore, dismissal will be with prejudice.

18

iv.    *Unjust Enrichment Claim*

Plaintiffs argue that the Feldmeiers' unjust enrichment counterclaim must be dismissed because the Feldmeiers have simultaneously brought a breach of contract counterclaim, which alleged that three written contracts governed the obligations of Plaintiffs and the Feldmeiers to each other.  Pltfs. Mem. at 7; A&C ¶¶ 236-40.  "It is well-established in Pennsylvania that, where an express contract exists which governs the rights and liabilities of the parties, a claim for unjust enrichment is precluded."  Southersby Dev. Corp. v. S. Park, No. 2:14-cv-01248, 2015 WL 1757767, at *15 (W.D. Pa. Apr. 17, 2015) (citing Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)).  But the Feldmeiers still "may plead an unjust enrichment claim in the alternative with a breach of contract action where there is some dispute as to whether a valid, enforceable written contract exists."[11]  Id. (collecting cases).

The Feldmeiers allege that the written contracts may be voided pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-7 (the "UTPCPL"), because the contracts arose from contact at the Feldmeiers' home and did not include cancellation clauses as required by the UTPCPL for such contracts.  A&C ¶¶ 196-97, 200, 243.  Plaintiffs do not challenge the adequacy of the Feldmeiers' pleadings concerning the validity of the written contracts under the UTPCPL at this stage.  Given the permissive alternative pleading permitted under Rule 8, taking the Feldmeiers' allegations as true and affording them the liberal construction warranted by their pro se status, the Feldmeiers dispute the validity of the at-issue written contracts.  Therefore, the Feldmeiers' unjust enrichment

---

[11] Although it is permissible to plead in the alternative claims for both breach of contract and unjust enrichment, recovery may be attained under only one of those causes of action.  Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. 2009).

counterclaim may be pleaded in the alternative to the breach of contract claim.  Plaintiffs'
Motion to Dismiss will be denied as to Counterclaim VIII.

    *v.*    *IIED*

To state a plausible claim for IIED under Pennsylvania law, the Feldmeiers must allege
sufficient facts demonstrating that (1) Plaintiffs' conduct was extreme and outrageous, (2)
Plaintiffs' conduct caused the Feldmeiers severe emotional distress and (3) Plaintiffs acted
intending to cause the Feldmeiers such distress or with knowledge that such distress was
substantially likely to occur.  Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001).
The Feldmeiers also must allege that they suffered some physical injury in support of their claim;
however, the Feldmeiers' allegations that they experienced, *inter alia*, anxiety, depression and
insomnia, see A&C ¶ 254, are adequate at the motion to dismiss stage to meet that requirement.
Fargione v. Sweeney, No. 5:16-cv-05878, 2017 WL 4283955, at *5 (E.D. Pa. Sept. 27, 2017)
(allegations of "stress, nervousness, anxiety[] and insomnia" sufficient); Wolking v. Linder, No.
3:23-cv-00806, 2024 WL 84206, at *5 (M.D. Pa. Jan. 8, 2024) (allegations of "fatigue,
insomnia[] and other symptoms" sufficient); cf. also Toney v. Chester Cnty. Hosp., 961 A.2d
192, 200 (Pa. Super 2008) (for negligent infliction of emotional distress, "a plaintiff who can
show such problems as 'long continued nausea or headaches, repeated hysterical attacks or
mental aberration' has demonstrated adequate physical injury to sustain a cause of action."
(quoting Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 609 (Pa. Super. 1993))), *aff'd*, 36 A.3d
83 (Pa. 2011).

Liability for IIED "has been found only where the conduct has been so outrageous in
character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized community."  Reedy v. Evanson, 615
F.3d 197, 231-32 (3d Cir. 2010) (quoting Field v. Phila. Elec. Co., 565A.2d 1170, 1184 (Pa.

20

Super. 1989)).  The facts pleaded in support of Feldmeiers' claim that Plaintiffs engaged in "extreme and outrageous" conduct amounts to the following:  Plaintiffs (1) filed the Complaint containing materially false information, A&C ¶ 250; (2) removed the roof of the Feldmeiers' home thereby exposing the home to damage, id. ¶¶ 164, 251; and (3) attempted to "extort" money from the Feldmeiers, id. ¶ 250.  Plaintiffs argue that these alleged facts, even if true, do not amount to conduct "so outrageous in character, and so extreme in degree," so as to support an IIED claim against them.  Pltfs. Mem. at 8-10.  The Court agrees.

As a preliminary matter, Plaintiffs' filing of the Complaint is not a viable basis for an IIED claim.  As discussed in Section E.iii, *supra*, the allegations in the Complaint were made as a regular part of judicial proceedings, and are pertinent and material to the relief sought.  Judicial privilege therefore precludes those statements from giving rise to an IIED claim under Pennsylvania law.

Even applying the liberal approach required for interpreting pro se pleadings, the Feldmeiers' allegations that repairs to their roof were not timely completed and the bare claim that Plaintiffs "extort[ed]" them do not meet Pennsylvania courts' high standard for conduct allowing an IIED cause of action to proceed.  See, e.g., Papieves v. Lawrence, 263 A.2d 118, 119-22 (Pa. 1970) (finding facts sufficient to establish IIED claim where a defendant struck and killed plaintiffs' son with his automobile, failed to render aid or notify authorities and buried the body in a field where it was discovered two months later and returned to plaintiffs); Brown, 269 F.3d at 219 (finding facts sufficient to establish IIED claim where "a police officer's attention was called to the severe emotional distress of the pet's owner, he hesitated before shooting, and he then attempted to fire five bullets into the pet within the owner's view and without

justification"). Plaintiffs' Motion to Dismiss will be granted as to Counterclaim IX, which will be dismissed without prejudice.[12]

## II.    ORDER

For the above reasons, Officer Ray's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and Count V of the Complaint is **DISMISSED** without prejudice. Plaintiffs' Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and Counterclaims IV and VI of the A&C are **DISMISSED** with prejudice and Counterclaim IX is **DISMISSED** without prejudice. Attorney Morris's Motion to Dismiss is **GRANTED**, and Counts I, II and III of the Third Party Complaint are **DISMISSED** with prejudice. **IT IS FURTHER ORDERED** that, for those counts dismissed without prejudice, the parties shall make last, best efforts to amend the pleadings to state claims. On or before April 17, 2026, Plaintiffs may amend Count V of the Complaint to the extent necessary to plead a viable § 1983 cause of action. The Feldmeiers may amend Counterclaim IX to the extent necessary to plead a viable IIED cause of action on or before the earlier of (*i*) 14 days after Plaintiffs' amendment of the Complaint, if any, and (*ii*) May 1, 2026.

---

[12] While it is doubtful that the Feldmeiers will be able to assert additional facts sufficient to sustain an IIED claim, providing the Feldmeiers with an opportunity to amend would not be inequitable or futile.

IT IS SO ORDERED.

March 31, 2026                                        s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     Chief United States District Judge


cc (via First-Class U.S. Mail):

      Wendy Feldmeier
      3875 Louisa Street
      Pittsburgh, PA 15227

      Steven Feldmeier
      3875 Louisa Street
      Pittsburgh, PA 15227

cc (via ECF email notification):

      All Counsel of Record